IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY WASHINGTON, | ) | CASE NO. 1:13 CV 624 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Barry Washington under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Washington, who was 53 years old at the time of the hearing,[11] has a GED and previously worked as an apartment maintenance worker, production machine operator, laundry worker, machine operator, rooting laborer, and concession attendant/fast food worker,[12] with the ALJ determining that his past relevant work was as a laundry worker.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Washington had the following severe impairments: degenerative discs from C5-7 with anterior spurring and bilateral foraminal encroachment, a history of right shoulder pain, post-traumatic stress disorder, psychotic disorder, depressive disorder NOS, bipolar disorder, and alcohol dependence.[14]

---

[6] ECF # 13.

[7] ECF # 19 (Commissioner's brief); ECF # 18 (Washington's brief).

[8] ECF # 19-1 (Commissioner's charts); ECF # 18-1 (Washington's charts).

[9] ECF # 17 (Washington's fact sheet).

[10] ECF # 22.

[11] Transcript ("Tr.") at 16.

[12] *Id.* at 46-48.

[13] *Id.* at 15.

[14] *Id.* at 10.

After concluding that the relevant impairments did not meet or equal a listing, with particular attention to the question of whether Washington's mental impairments met or equaled Listings 1.04 and 12.04,[15] the ALJ made the following finding regarding Washington's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, frequent balancing, stooping, kneeling, crouching, and crawling; occasional right arm overhead reaching, limited to no work around alcohol, limited to simple routine and repetitive tasks involving no more than 4 steps, limited to no production or pace work, and limited to superficial interaction with the public and co-workers.[16]

Based on that residual functional capacity, the ALJ found Washington capable of his past relevant work as a laundry worker and, therefore, not under a disability.[17] Alternatively, the ALJ, after hearing testimony from the vocational expert, found that Washington was capable of making a successful adjustment to other work that exists in significant number in the national economy.

The ALJ, therefore, found Washington not under a disability.[18]

---

[15] *Id.* at 10-11.

[16] *Id.* at 12.

[17] *Id.*

[18] *Id.* at 17.

**C.      Issue on judicial review**

Washington asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Washington's challenge presents the following issue for judicial review:

> The ALJ found that Washington's mental limitations limited him to superficial interaction with the public and co-workers. Although two medical sources opined consistent with that limitation, one examining source rated Washington's ability to relate to others in the work environment as markedly impaired. Does substantial evidence support the limitation on social interaction incorporated into the RFC?

Washington argues that the RFC finding rests on an "inaccurate analysis and weighing of opinion evidence in the record"[19] – namely, the opinions of two examining psychologists, David House, Ph.D. and Margaret Zerba, Ph.D., and the opinion of a non-examining psychologist, Cindy Matyi, Ph.D.[20]

**D.      Disposition**

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.      Standard of review -** *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[19] *Id.* at 13.

[20] *Id.* at 14.

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Application of standard**

Washington here is only challenging the RFC as it pertains to the mental limitations addressed by the psychologists at issue. Further, none of the medical sources at issue here

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

are treating sources, so the treating source rule and the good reasons requirement pertaining to that rule are not implicated.

With that said, the key factor cited by Washington in the three opinions raised here involves a limitation on Washington's ability to relate or interact with others. Dr. House opined that Washington's ability to relate to others and deal with the public, including fellow workers and supervisors was "moderately limited."[24] Dr. Zerba concluded that Washington was "markedly impaired" in his ability to relate to others in the work environment.[25] Dr. Matyi stated that Washington's ability to interact appropriately with the public, to accept instruction and respond appropriately to criticism from superiors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes was moderately limited.[26]

The ALJ assessed these three opinions as follows:

- Dr. House's opinion was entitled to some weight because the limitations he describes are based on Washington's own statements and are not well supported by the medical evidence;

- Dr. Zerba's opinion as to a marked limitation is entitled to little weight because it appears to be based on Washington's own subjective complaints, which the ALJ found not to be credible; and

- Dr. Matyi's opinion is entitled to great weight because it is consistent with the record as a whole.[27]

---

[24] Tr. at 241.

[25] *Id.* at 262.

[26] *Id.* at 293-94.

[27] *Id.* at 14.

As Washington initially observes, the ALJ's reasoning for assigning the weight he did to the various opinions is both internally inconsistent and poorly articulated. For example, the ALJ clearly accepted that Washington had post-traumatic stress disorder, psychotic disorder, and depressive disorder as three of his severe impairments[28] yet lessened the weight given to functional limitations arising from those disorders articulated by Dr. House, who specifically based his RFC opinion on the features of post-traumatic stress and depression.[29] Likewise, Dr. Zerba's limitations opinion was grounded on, among other factors, Washington's depression.[30]

Finally, with both Dr. House and Dr. Zerba basing their RFC evaluations on the same severe impairments that the ALJ himself found in Washington, it must be noted that Dr. Matyi's source for her RFC opinion, which was given great weight, was only the reports of Drs. House and Zerba, since Dr. Matyi made no personal examination of Washington.[31]

That said, however, the opinion of Dr. Matyi, which was assigned great weight, does have the support of substantial evidence in the record and so provides a sufficient basis to affirm the RFC. While the reasoning and articulation here is not without deficiency, as noted above, it was not improper for the ALJ to rely on the opinion of a non-examining state agency source, who is generally considered to be an expert in Social Security disability

---

[28] *Id.* at 10.

[29] *Id.* at 241-42.

[30] *Id.* at 262.

[31] *Id.* at 293-96.

-7-

evaluations, and who are acknowledged to be useful to the ALJ in making sense of the whole record.[32]

Although Washington argues that Dr. Matyi's opinion cannot be based on the record as a whole since she offered it prior to the addition of more evidence,[33] the ALJ specifically recognized that additional evidence had been submitted after the date of Dr. Matyi's opinion[34] but noted that Dr. Matyi's opinion was nevertheless consistent with the record as a whole.[35] Since Dr. Matyi is not a treating source, and thus the ALJ is under no special heightened standard of articulation concerning his reasons for assigning weight to her opinion, the reasons given are sufficient. Moreover, as the Commissioner points out,[36] a later opinion from another state agency psychological consultant, Dr. Irma Johnston, affirmed Dr. Matyi's previously-stated opinions.[37]

In addition to the above-related argument, Washington contends that the ALJ's decision is flawed by resting in part on a hypothetical to the VE that did not accurately reflect the limitations reflected in the RFC.[38] In particular, Washington maintains that Dr. Matyi's opinion was that he could "perform best in a setting with 'minimal interaction' but could

---

[32] 20 C.F.R. §§ 404.1527(e)(I), 416.927(e)(2)(I); *Buxton*, 246 F.3d at 775.

[33] ECF # 18 at 16.

[34] Tr. at 13.

[35] *Id.* at 14.

[36] ECF # 19 at 17.

[37] Tr. at 307.

[38] ECF # 18 at 16.

-8-

relate adequately on a superficial basis."[39] But, Washington argues, the hypothetical posed by the ALJ, on which the VE relied, concerned an individual limited, in part, "to 'occasional and superficial interaction with the public and coworkers.'"[40]

In essence, Washington takes issue with the use of the qualifying term "superficial" in the ALJ's formulation of the hypothetical, arguing that the term could be understood as imposing a qualitative limitation and not a quantitative one. In other words, that under the limitation as formed by the ALJ, Washington's contact with the public could be frequent, but not of any significant substance – a limitation that would not include Dr. Matyi's limitation of only minimal or infrequent interaction.[41]

In fact, as the Commissioner observes, the transcript indicates that the ALJ did incorporate into his hypothetical both the qualitative limitation that interaction be "superficial," as well as the quantitative limitation that interaction be only "occasional."[42] As the record further demonstrates, the VE responded based on that hypothetical, and the ALJ based his step four finding as to Washington's ability to do past relevant work on that response. Thus, any reference in the RFC to superficial but not occasional does not reflect the record itself and provides no basis for a remand.

---

[39] *Id.* (quoting transcript).

[40] *Id.*

[41] ECF # 18 at 16-17.

[42] Tr. at 48.

## Conclusion

Therefore, for the reasons stated above, substantial evidence supports the finding of the Commissioner that Washington had no disability. Accordingly, the decision of the Commissioner denying Washington disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.


Dated: May 14, 2014						s/ William H. Baughman, Jr.
								United States Magistrate Judge